INDIANAPOLIS RAILWAYS, INCORPORATED *v.* BOYD.

[No. 27,973. Filed March 28, 1944. Rehearing denied April 27, 1944.]

482

484

*Arthur L. Gilliom* and *B. E. Sattler,* both of Indianapolis, and *Ralph Adams,* of Shelbyville, for appellant.

*Joseph M. Howard, O. P. Kensinger,* and *Wesley T. Wilson,* all of Indianapolis, and *Herbert C. Jones,* of Shelbyville, for appellee.

Swaim, J.—The appellee recovered a judgment for damages for injuries sustained when the taxicab which he was driving was in collision with a streetcar of the appellant at the intersection of Michigan and Noble Streets in the City of Indianapolis, Indiana. Michigan Street extends east and west and Noble Street north and south. There are traffic control signals at the northeast and southwest corners of the intersection which regulate traffic at the intersection by showing red and green lights successively.

The streetcar tracks extend along Michigan Street from the east to the intersection and then turn to the south into Noble Street. At the time of the collision the appellant's streetcar traveled west on Michigan Street to a point just east of the intersection where it stopped to unload passengers and then, while the traffic signals were green for east and west traffic, proceeded into the intersection to the point of collision. The collision occurred approximately twenty feet from the point where the streetcar entered the intersection. The appellee was driving his taxicab east on Michigan Street. When he reached this intersection the traffic lights were red and he stopped in obedience thereto. He saw the streetcar stop just east of the intersection to unload passengers. When the traffic lights changed to green he drove his taxicab east along the south half of Michigan Street to the point of collision which was approximately forty feet from the point where he had stopped. He was intending to continue east along Michigan Street. The above facts are admitted.

Plaintiff's complaint alleged that the negligence of the defendant consisted specifically of the following acts and omissions:

"A. That the defendant, by and through its said street car motorman, acting as aforesaid, operated said

street car west on the said Michigan Street and into and upon said intersection and did drive said street car south across the center of said Michigan Street and onto the south side thereof without first ascertaining whether or not this plaintiff's red-cab, or any other east-bound traffic was approaching.

"B. That the defendant, by and through the said street car motorman, acting as aforesaid, operated said street car west on the said Michigan Street and into and upon said intersection and did drive said street car south across the center of the said Michigan Street and onto the south side thereof without first giving a signal or warning to this plaintiff of its intention so to do.

"C. That the defendant, acting as aforesaid, by and through its said street car motorman, did fail and refuse to apply the brakes, of said street car when the collision with the said red-cab was imminent.

"D. That the defendant, acting as aforesaid, by and through its said street car motorman, swerved said street car from the north side of the said Michigan Street and onto the south paved portion thereof and into plaintiff's said red-cab which was lawfully occupying said portion of said street and proceeding east in oncoming east-bound traffic."

The defendant moved for a directed verdict at the close of the plaintiff's evidence and again at the close of all of the evidence both of which motions were overruled by the court.

In addition to the general verdict in favor of the plaintiff the jury, in answer to special interrogatories, found that the plaintiff exercised "such care to prevent the collision and injuries of which he complains as a person of ordinary prudence would exercise for such purpose in like or similar circumstance as these shown

by the evidence in this case." And, also, that the plaintiff drove "the taxicab which was in the collision onto the track on which the street car was traveling within the intersection in question in front of said street car when said street car was in the act of passing through said intersection."

All of the assigned errors relied on by the appellant were raised by its motion for a new trial.

The appellant first insists that there was not sufficient evidence to support a finding of any one of the specific acts of negligence alleged in the complaint.

The appellant insists that the taxicab and the streetcar entered the intersection at the same time. The motorman testified that the streetcar and the taxicab entered the intersection "about the same time." But the appellee, the passenger in his cab, two passengers, who left the streetcar at this intersection, and the driver of an automobile traveling east immediately behind the appellee, all testified that the appellee taxicab was far out in the intersection before the streetcar entered the intersection. Physical facts would also seem to indicate that the taxicab entered the intersection before the streetcar. It seems to be agreed by all witnesses that the taxicab and the streetcar were being driven at about the same speed and that to reach the point of collision from the west line of the intersection, the taxicab traveled considerably farther than the streetcar traveled from the east line of the intersection. There was ample evidence to sustain an inference that the taxicab was well within the intersection when the streetcar entered the intersection.

The appellant admits that if an automobile, under the circumstances of this case, had made a left turn and driven into the line of east and west traffic, as the streetcar did, it would have been violating the law of

the road and would have been in the wrong. On page 134 of the appellant's brief the appellant says, "An automobile traveling on the same track in the intersection would not have had the right to proceed as against other automobiles, because there is no statute that forbids one automobile from proceeding in front of another which has started to cross an intersection, as there is in case of street cars."

The statute to which the appellant was referring is § 98 of ch. 48, Acts of 1939 (§ 47-2112, Burns' 1933 [1940 Replacement], § 11189-109, Baldwin's 1934 [1939 Supplement]), which provides "When a street car has started to cross an intersection, no driver of a vehicle shall drive upon or cross the car tracks within the intersection in front of the street car." The statute of which this section is a part is a comprehensive act which undertakes to regulate traffic under all situations on the highway. It is a uniform highway traffic regulation act. It must be construed as a whole.

The appellee earnestly contends that the particular section, relied on by the appellant, applies only to intersections where the streetcar is crossing the intersecting street and not where it is making a turn across the corner of the intersection as in the instant case. There is considerable force to the appellee's argument, but we need not decide that question in this case.

The entire statute recognized and enacts into statutory law, the law of the road or general custom regulating traffic on public highways to avoid collisions. Section 78 of said act provides that the driver of a vehicle within an intersection, intending to turn to the left, shall yield the right-of-way to any vehicle approaching from the opposite direction "which is within the intersection or so close thereto as to con-

stitute an immediate hazard." Section 77 of the act provides for the situation where two vehicles are approaching or entering an intersection from different highways and gives the right-of-way to one entering or approaching from the right. Section 61 of said act provides for driving on the right half of the roadway. These sections of the act cover vehicles. Vehicles, as defined by paragraphs a and b of § 3 of said act expressly excludes vehicles operated upon stationary rails or tracks. The sections, however, illustrate how the general rules of the road are incorporated in the system for the control of traffic which this act attempts to provide.

The act also has some sections giving special rules for the control of traffic in certain situations or under certain circumstances. One example of this is § 81 which provides for the control of other traffic upon the approach of an authorized emergency vehicle. This section is expressly made applicable to streetcars and provides that they shall stop upon the approach of such emergency vehicle. Nothing is said in this section concerning the section which provides that no driver of a vehicle shall drive upon the tracks in front of a streetcar which has started to cross an intersection, but no one could doubt that in such a situation the provisions concerning emergency vehicles would necessarily prevail over the provisions of the section forbidding a vehicle to drive upon the streetcar tracks.

By § 34 of the act special rules are also provided for the control of the traffic at an intersection where there are traffic control signals. This section provides that when such traffic control signals show "green" or the word "go," "Vehicular traffic facing the signal, . . . may proceed straight through or turn right or left, unless a sign at such place prohibits

either such turn. But vehicular traffic shall yield right-of-way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited." The last paragraph of said section provides: "The motorman of any street car shall obey the above signals as applicable to vehicles." The preceding section of the act, § 33, also provides: "No driver of a vehicle or motorman of a street car shall disobey the instructions of any official traffic control device . . . ." If vehicular traffic at such an intersection is required to yield the right-of-way to other vehicles which are within the intersection at the time the signal is exhibited and if motormen of streetcars are also required to obey such signals, it necessarily follows that at an intersection where there are traffic signals the streetcars must yield the right-of-way to vehicles which have so entered the intersection on the "green" or "go" signal. This must mean that vehicles so entering the intersection are authorized to cross the streetcar tracks even when a streetcar has entered an intersection. It necessarily follows, therefore, that we must consider that it was the intention of the General Assembly that § 98b of said act should not apply to an intersection where traffic is controlled by traffic control signals.

The reasons for the provision of special rules for intersections where there are such signals is obvious. Ordinarily such signals are placed only at intersections where traffic is heavy. Where traffic is heavy enough to justify the placing of such signals it is necessary, in order to keep traffic moving in an orderly manner and to avoid collisions and accidents, that the rules provided for such intersection be strictly followed. It would necessarily lead to confusion and accidents if at such an intersection streetcars were to follow one provision of the statute which gave them the right to proceed,

while automobiles were to follow another provision of the statute giving them the priority.

The construction we have placed on the statute puts the streetcar of the appellant on the same basis as if it had been an automobile and, therefore, by the appellant's own admission gave the taxicab of the appellee the right to proceed. The taxicab was facing the signal when the green light was exhibited. By the express words of the statute this gave to the appellee the right to "proceed straight through." He was not required to stop at the streetcar tracks and wait for the streetcar to proceed, even if the streetcar had then entered the intersection. The streetcar was making a left turn into the line of traffic in which the appellee was traveling east. It was required to slow down or, if necessary, stop to permit the appellee to proceed. Instead the motorman drove "said street car from the north side of said Michigan Street and onto the south paved portion thereof and into plaintiff's said redcab which was lawfully occupying said portion of said street and proceeding east in oncoming east-bound traffic," as alleged in appellee's complaint.

Our attention has been called to the fact that in *Hargis* v. *State of Indiana* (1942), 220 Ind. 429, 44 N. E. (2d) 307, this court said that in the second sentence of paragraph (a) 1 in said § 34 of said act we could eliminate as surplusage the words "to other vehicles and," because the subject of the right-of-way as between one vehicle and another was fully covered by §§ 77, 78 and 79 of said act. This statement was not necessary to the decision in that case and further study of the question has convinced us that the statement was not correct. These three sections of the act deal with vehicles within the intersection, entering the intersection and approaching the intersec-

tion. Section 34 provides that all traffic must stop out-side of the intersection if the signal light is red and may proceed only in obedience to such signals. Here again we must conclude that the Legislature intended that the right-of-way as between vehicles at an inter-section where traffic is controlled by traffic control sig-nals must be determined by the special rules of said § 34 of said act.

By our interpretation of this statute the taxicab of the appellee under the circumstances in this case, had the right-of-way as against the streetcar of the appellant. There was sufficient evidence to sup-port a finding by the jury that the appellant motorman was negligent as alleged in the complaint and that such negligence was the proximate cause of the collision and the resultant injury to appellee.

The appellant insists that even though the motorman was guilty of negligence the evidence forces us to con-clude as a matter of law that the appellee was guilty of contributory negligence. Most of the argument of the appellant on this point, however, is predicated on the contention that the appellee violated the statute by crossing the tracks after the streetcar had entered the intersection. This contention has been disposed of by our holding that the taxicab had the right-of-way.

Nor do we believe that the appellee was guilty of contributory negligence, as a matter of law, merely because he saw the streetcar, was aware of its presence at all times and, regardless of that fact, drove his taxicab upon the tracks. The appellee was proceeding east along the south half of Michigan Street pursuant to the green light of the traffic control signal. Other automobiles were following behind him, one within five feet of the rear of his taxicab. In driving across the intersection it was necessary for him

to watch the street in front of him and to be on the lookout for pedestrians and other traffic. He could not keep his eyes constantly on the streetcar and safely drive his taxicab across the intersection. Nor was he required to constantly watch the streetcar. He had a right to assume that the motorman, making a left turn, would not drive the streetcar into the traffic which was passing directly through the intersection pursuant to the green light. He heard no signal from the streetcar warning him that the motorman was not intending to yield the right-of-way to the taxicab. The streetcar was traveling at a slow rate of speed and the appellee could assume that the streetcar could be quickly stopped. When he first realized that the streetcar was not going to stop it was within three feet of his taxicab and too late to avoid a collision. With another automobile following immediately behind him he attempted to swerve the taxicab to the south which was the only thing he could then do in attempting to avoid the collision. There was evidence from which the jury could have inferred all of these facts. Under these circumstances we cannot say, as a matter of law, that the appellee was guilty of contributory negligence.

The appellant objected to the giving of appellee's requested instruction No. 2. This instruction told the jury that the mere knowledge on the part of the appellee of the location of appellant's streetcar track and of the presence of the streetcar at the intersection did not necessarily make it negligence for appellee to operate his taxicab into said intersection; and that in the absence of any notice to the contrary, the appellee had the right to assume that the motorman of the streetcar would exercise reasonable care in the operation of said streetcar. The appellant objects to this instruction as invading the province of the jury.

The instruction correctly told the jury that the mere knowledge of the appellee of the location of the tracks and of the presence of the streetcar at the intersection did not make it necessary to find the appellee guilty of negligence in driving his taxicab into said intersection. Appellant objected to the second part of this instruction only on the theory that only those exercising ordinary care have the right to assume that others will exercise ordinary care. There was evidence to support the finding of the jury that the appellee was in the exercise of ordinary care.

Appellant objected to the giving of appellee's requested instruction No. 3 which told the jury that the appellant's streetcar had no greater right to the use of the streets than an automobile would have had under the same circumstances; and that it was the duty of the appellant's motorman to operate the streetcar with due regard for the rights and safety of others lawfully using said streets. The appellant objected to this instruction on the grounds that it ignored the provisions of § 98, *supra*. As we have shown above, this section of the act was not applicable at an intersection where there are traffic control signals.

Instructions Nos. 4 and 5 requested by the appellee and given by the court were both on the right of the appellee to assume that the motorman would exercise due care in operating the streetcar. Appellant also objected to these two instructions because they failed to take into consideration § 98 of said act.

The appellant objected to instruction No. 8, given by the court on its own motion, which instruction was as follows: "In this case, the plaintiff can not recover unless the damages complained of were proximately caused by one or more of the acts

of negligence as alleged in said complaint." The appellant objects to this instruction on the ground that it invaded the province of the jury by characterizing the charges of negligence made in the complaint as "acts of negligence." The appellant overlooks the fact that the words complained of were immediately followed by the words "as alleged in the said complaint." If the word "alleged" had preceded the word "negligence" instead of following it we do not believe there could be any question as to the instruction invading the province of the jury. Nor do we believe that the jury could have misunderstood this instruction as it was given and have understood that the court was saying that the acts or omissions alleged in each of the paragraphs of the complaint designated A, B, C and D did constitute negligence. As authority for its contention the appellant cites *American Hominy Co.* v. *LaForge* (1915), 184 Ind. 600, 111 N. E. 8. The instruction there under consideration instructed the jury that the charges of negligence in the plaintiff's complaint are, first, the failure to blow the whistle, second, the failure to ring the bell and third, the failure to give any warning signal of the approach of its engine and that the plaintiff, in order to recover must have shown that the defendant's servant, in running its engine, was guilty of one or more of said acts of negligence which proximately caused plaintiff's injury. This court there said that the instruction in effect told the jury that each of said three acts constituted negligence and thereby the instruction invaded the province of the jury. The difference in the two instructions is apparent.

The defendant complains of the refusal of the court to give instructions Nos. 5, 10 and 12 tendered by the appellant. Each of these three instructions was on the theory that the appellee was prohibited by statute

from crossing the tracks of the appellant when the streetcar was in the intersection. These instructions were properly refused.

Instruction No. 14, tendered by the appellant, would have told the jury that if it found from the evidence that the appellee was familiar with the location, conditions and surroundings of the appellant's streetcar tracks at said intersection and the manner in which the appellant's streetcars were operated thereon, that the appellee was required to exercise ordinary care with regard to the danger involved. There was evidence that the appellee was familiar with the intersection but no evidence that he was familiar with the manner in which the defendant's streetcars were operated thereon and there was no evidence of any knowledge on his part that streetcars making a left turn on said intersection did not yield the right-of-way to automobiles crossing said intersection with the "go" sign. Other instructions given by the court fully covered the duty of the appellee to use due care for his own safety.

The appellant sought to show, by the testimony of its motorman, that there was a custom on the part of eastbound vehicle traffic at this intersection to enter the intersection slowly on the green light and wait to cross the tracks until streetcars entering the intersection, from the east, had made the left turn and proceeded on into Noble Street. The court sustained the appellee's objection to the introduction of this testimony. The appellant insists that it was error on the part of the court to reject this evidence because it would have established a circumstance to be considered on the question of the motorman's negligence. It is true that under some circumstances the

question of a known custom might be important in determining the question of the negligence of an individual under certain circumstances, but even if capable of proving, a custom or usage contrary to a traffic ordinance or regulation or to the general law of the road should not be admitted to excuse a violation of such regulation. Huddy, Ninth Edition, Cyclopedia of Automobile Law, Vol. 15-16, p. 373, § 201. See also, *Carson* v. *Turrish* (1918), 140 Minn. 445, 168 N. W. 349; *Casey* v. *Boyer* (1921), 270 Pa. 492, 113 A. 364. In the instant case, under the applicable statute and under the general law of the road, the appellee had the right to proceed directly through said intersection. There was no intimation nor any attempt to prove that the appellee had any notice or knowledge of the custom which appellant attempted to prove. The fact that prior to this accident streetcars had turned left through the line of traffic of automobiles proceeding east on Michigan Street; and that such automobiles had slowed down or stopped to avoid a collision would give the streetcars no right to continue such violation of the right-of-way of the automobiles, and would give the motorman of such streetcars no right to believe that the appellee would know of such practice or would slow down or stop the taxicab in order to permit the streetcar to proceed through the line of traffic.

In the closing argument to the jury, counsel for the appellee, while arguing that the streetcar motorman was bound to use due care at the intersection in question, illustrated his argument by referring to a bus making a left turn at a street intersection in Shelbyville where there were traffic control signals and with which intersection the members of the jury were familiar. At the close of the argument by counsel for appellee, counsel for appellant made a mo-

tion to be allowed to reply to this "new point" made by counsel for the appellee. The motion, we think, was properly overruled. By such reference counsel for the appellee had advanced no new argument or point, but had only illustrated his argument by a reference to a similar situation with which the jury was familiar. A streetcar and a bus were both subject to the provisions of § 34 of said act at any intersection where traffic was controlled by traffic control signals.

Special interrogatory No. 4, submitted to the jury at the request of the appellant, asked how close the front of the streetcar was to the taxicab as the taxicab entered on the track. This interrogatory was not answered by the jury and no motion was made by the appellant to require the jury to answer it. The appellant, by permitting, without objection, the answer to the interrogatories and the general verdict to be received and the jury to be discharged, waived the irregularity of the jury failing to answer said interrogatory. *McElfresh* v. *Guard* (1869), 32 Ind. 409; *The Chicago and Eastern Railroad Co.* v. *Ostrander* (1888), 116 Ind. 259, 15 N. E. 227, 19 N. E. 110.

In view of the evidence as to the appellee's damages we cannot say that the amount of the verdict shows that the jury, in assessing the damages, acted from prejudice, partiality or corruption.

Finding no reversible error the judgment is affirmed.

NOTE.—Reported in 53 N. E. (2d) 762.

ON PETITION FOR REHEARING.

SWAIM, J.—In its petition for a rehearing the appellant earnestly contends that in our opinion in this case we misinterpreted the provisions of the Uniform Act Regulating Traffic on Highways.

In our opinion we were considering only the question presented by the facts of this case and intended the rules announced therein to be applicable only to a situation where a streetcar is making a left turn in an intersection where traffic is controlled by traffic control signals.

Appellant has incorrectly assumed that the opinion construed subparagraph 1 of paragraph (a) of section 34 of the act as giving the right-of-way to a vehicle first entering the intersection on the same green light. This was neither said nor intended. By a consideration of the entire act we found that this subparagraph was in conflict with paragraph (b) of section 98 which latter paragraph, if considered by itself, would give a streetcar which had started to cross any intersection the right-of-way over any vehicle without regard to the position of the vehicle at the time the streetcar started across. The appellant contended and still contends that paragraph (b) of section 98 "does not except any intersections, nor does the act except any intersection from the operation of paragraph (b)." of said section 98.

A conflict between two unambiguous provisions of an act creates an ambiguity which we may dissolve by a consideration of the entire act.

The last paragraph of section 34 of said act requires that "The motorman of any street car shall obey the above signals as applicable to vehicles." The appellant apparently contends that this only means that the streetcar shall stop and start at such an intersection pursuant to the signal and that if the streetcar has the "go" sign it shall then proceed as a streetcar and not as a vehicle. With this contention we cannot agree.

The second sentence of subparagraph 1(a) of section 34 provides that vehicular traffic facing the signal when

the "go" sign is exhibited may proceed straight through the intersection, but "shall yield right-of-way to other vehicles . . . lawfully within the intersection at the time such signal is exhibited." The appellant cannot seriously contend that its motorman obeying the signals "as applicable to vehicles" would not be required to yield the right-of-way to vehicles which were travelling at right angles to the streetcar and which had entered the intersection when they had the "go" signal. The act must be construed to mean this and, therefore, to mean that the streetcar is not only required to stop and start like a vehicle but that it is also required to proceed through the intersection like a vehicle.

Subparagraph 1(a) of section 34 also permits vehicular traffic entering the intersection on the "go" sign to turn left as the streetcar did in the instant case. This particular section says nothing about the right-of-way as between the vehicle turning left and the vehicle which has entered the intersection on the same "go" sign from the opposite direction and is proceeding straight through, as expressly authorized by the same subparagraph.

The provision which requires a motorman operating a streetcar in an intersection where traffic is controlled by signals to proceed under the rules governing the drivers of other vehicles is not limited to the provisions of this particular section of the act. Section 78 of the act provides that a vehicle desiring to make a left turn within an intersection shall yield the right-of-way to any vehicle approaching from the opposite direction "which is within the intersection." Therefore, while a vehicle, or a streetcar proceeding under the rules applicable to a vehicle, may, under the provisions of section 34, "proceed straight

through or turn right or left," the right to turn left is limited by the provision of section 78 that in turning left the right-of-way must be yielded to vehicles coming straight through the intersection from the opposite direction.

We believe a consideration of the act as a whole requires this construction.

The petition for a rehearing is denied.

NOTE.—Reported in 54 N. E. (2d) 272.