FOX, USE OF HIMSELF AND CALVERT FIRE INSURANCE
COMPANY
*v.*
BALTIMORE TRANSIT COMPANY ET AL.

[No. 64, October Term, 1949.]

*Decided February 9, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Kenneth S. Carmody* and *Benjamin A. Earnshaw* for the appellant.

*George D. Solter,* with whom was *Philip S. Ball* on the brief, for the appellee, the Baltimore Transit Company.

MARKELL, J., delivered the opinion of the Court.

This is an appeal by plaintiff from a judgment for defendants in a suit for damages to plaintiff's automobile in a collision with defendant's street car. The collision occurred at the intersection of Carrollton Avenue and Fayette Street about two o'clock in the morning the day after Christmas, 1947, during a light snow. At Carrollton Avenue Fayette Street is a through highway or "boulevard"; there are stop signs on Carrollton Avenue. Plaintiff was driving east on Fayette Street, he says at twenty or twenty-five miles an hour; the motorman says at "a reasonable speed, a moderate rate of speed." The street car was running north on Carrollton Avenue and turning left into Fayette Street, the motorman says, at "not even five miles an hour." The motorman says he first saw plaintiff's automobile "a hundred or two hundred feet away", "about halfway up the block." He had stopped at Fayette Street and discharged a passenger. He started because [he thought] he "had time enough to get around". Plaintiff says he first saw the street car when he was "about twenty feet from the inter-section"; he applied his brakes and when he "saw him keep coming" at him, "mashed down hard", so that he slid in the snow. The automobile struck the left side of the street car before the turn was completed. For present purposes any conflicts in testimony will be ignored.

About the moment of the collision plaintiff's automobile was lightly struck in the rear by the automobile of A. George Miller. Plaintiff sued the transit company and Miller. A verdict was directed for Miller, and no objection to this ruling has been preserved. This appeal, therefore, presents no question regarding Miller. The transit company is referred to as the defendant. It is suggested, but not argued, by defendant that a verdict might have been directed for defendant. On the evidence in the appendices we think the suggestion is untenable. The only question (if any) presented on this appeal is alleged error in charging or failing to charge the jury.

Apparently before the charge, plaintiff excepted "to the refusal of the court to grant my request to charge the jury pertaining to stop signs, as noted in Article 66-½." No written prayer or oral request to charge is set out in the appendices. In the charge the court said, "In this case, the boulevard law does not apply to street cars. There was no traffic light at this intersection working." After the charge plaintiff entered "a general exception to the charge as well as a special exception to the ruling on the question of stop signs." The court said, "You have already done that."

The "general exception" is of no avail on appeal. Defendant contends that no question at all is properly presented here. The General Rules of Practice and Procedure, Part Three, subd. III "Trials", Rule 6(d) provides: "(d) Appeal. Upon appeal a party, in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the specific grounds of objection distinctly stated at that time; and no other errors or assignments of error in the instructions shall be considered by the Court of Appeals." In providing, in Rule 6(b), that the court "need not grant any requested instruction if the matter is fairly covered by instructions actually given" and "an oral

charge need not comply with the technical rules as to prayers", it is recognized that prayers are usually less intelligible to a jury than an oral charge and in the past often operated as traps for the trial judge, to obtain exceptions on appeal. Nevertheless, counsel sometimes seem to overlook the fact that a simple way to preserve a real point of law on appeal is to state it precisely in a prayer or requested instruction. The court need not in terms grant the requested instruction, but "if the matter is not fairly covered by instructions actually given" the point can be preserved by objection to failure to give the requested instruction. However, formal prayers or requested instructions are not the only way a point can be preserved under Rule 6(d). In the instant case it clearly appears (1) that plaintiff requested some instruction as to the statutory law pertaining to stop signs, and (2) that in charging that "the boulevard law does not apply to street cars" the court in effect ruled that the statutory law as to stop signs has no bearing on defendant's rights or duties in this case, and (3) that in objecting to this "ruling" plaintiff did "distinctly object" to a particular portion of the instructions, (if not to a particular failure to instruct), on the specific ground that the statutory law as to stop signs does affect defendant's rights and duties.

The question presented, therefore, is what, if any effect the statutory law as to "stop signs" has upon defendant's rights and duties. Section 2(65) of Article 66-½ defines "vehicles" so as to except street cars. Section 140(a) provides, "(a) No driver of a vehicle or operator of a street car * * * shall disobey the instructions of any official traffic-control device placed in accordance with the provisions of this Article, unless at the time otherwise directed by a peace officer." Section 187(a) provides that the State Roads Commission and the local authorities respectively "[1] may designate through highways and erect stop signs at specified entrances thereto or [2] may designate any intersection as a stop intersection and erect like signs at one or more en-

trances to such intersection." (Bracketed numbers supplied.)  187 (b) provides for the physical requirements and location of "stop signs".   Section 187 (c) provides:  "Every driver of a vehicle shall come to a full stop at such sign or at a clearly marked stop line before entering an intersection and yield the right of way to vehicles approaching on the intersecting highway except when directed to proceed by a peace officer or traffic control signal."   Section 178 provides, "(a) The driver of a vehicle shall come to a full stop as required by this Article at the entrance to a through highway and shall yield the right of way to other vehicles approaching on said through highway. (b) The driver of a vehicle shall likewise come to a full stop in obedience to a stop sign and yield the right of way to a vehicle approaching on the intersecting highway as required herein at an intersection where a stop sign is erected at one or more entrances thereto although not a part of a through highway."   Section 178(a) and (b) obviously, though not in terms, refer to section 187(a) and (b) and in effect separate and duplicate the provisions of section 187(c) as to stop signs at (a) a through highway and (b) some other intersection.

Defendant says, section 140(a) is applicable to street cars, therefore they must "obey the instructions" of stop signs by stopping; Section 178 [and likewise Section 187] is not applicable to street cars, therefore they need not "yield the right of way".   This argument is plausible but not conclusive.   We think it is an oversimplification.   The principles of statutory construction —or of semantics (to substitute a term of current scepticism)—cannot make the 313 sections of Article 66-½ each a separate idea-proof compartment.   Section 140(a) does not define what is meant by "obeying the instructions of a stop sign", but section 187(c) [and section 178] supplies the definition as including [1] to stop and [2] to yield the right of way.   Section 140(a) in terms is applicable to street cars, section 187 [and section 178] is not.   But section 140(a) requires obedience to the

instructions of stop signs, *i.e.*, by clear implication it requires street cars to do what "vehicles" are expressly required to do in obedience to such instructions. In *Greenfeld v. Hook*, 177 Md. 116, 125, 8 A. 2d 888, 892, 136 A. L. R. 1485, the court said, "The two duties, of stopping and of yielding the right-of-way, are correlated and co-ordinate. That of stopping is to give force and practicability to that of yielding the right-of-way, by requiring the inhibited traveller before entering the intersection to stop in order that he may ascertain whether traffic is approaching over and along the favored highway. The rule could have no other rational purpose, for unless the inhibited traveller yields the right-of-way to traffic on the stop street, the mere act of stopping would be idle, useless and futile." That case did not involve any question as to street cars, but we think "the mere act of stopping" would be no less "idle, useless and futile" in the case of a street car. Indeed, in the instant case the street car stopped solely or primarily to discharge a passenger at the crossing, which apparently was too far south of the Carrollton Avenue building line to give an adequate view west of Fayette Street. It would do violence to the fair import of the words of section 140(a) to say that in forbidding a "driver of a vehicle" or "operator of a street car" to "disobey the instructions of a stop sign," it requires of the driver of the vehicle an essentially inseparable duty to stop and yield the right of way but requires of the operator of the street car only part of this inseparable duty.

We are not unmindful of the differences between street cars and automobiles and the impossibility of applying to them traffic regulations in all respects identical. But there are inseparable relations between their traffic problems. We decide only the specific question of statutory construction now before us. In determining the legal sufficiency and weight of evidence of negligence, as affected by the right of way at stop signs, courts and juries cannot ignore the differences between street cars

and automobiles. We cannot say in advance what may be the consequences, if any, of these differences in any particular case.

We have not been cited, and have not found, any case in this court or elsewhere, directly in point on the specific question of construction now before us. In *Indianapolis Railways, Inc. v. Boyd*, 222 Ind. 481, 491, 53 N. E. 2d 762, 765, 54 N. E. 2d 272, it was held that a comprehensive traffic law must be considered as a whole, including some provisions applicable and others not applicable to street cars, and that a provision that when a street car has started to cross an intersection, no driver of a vehicle shall drive upon or across the car tracks within the intersection in front of the street car is not applicable to a traffic light intersection governed by a provision similar to section 141 of Article 66-½. The court said, "It would necessarily lead to confusion and accidents if at such an intersection street cars were to follow one provision of the statute which gave them the right to proceed, while automobiles were to follow another provision of the statute giving them the priority." We cite this Indiana case only as presenting an analogous problem of statutory construction. We do not suggest that on the facts of that case the same or a different result would be reached under Maryland statutes and decisions.

House Bill No. 156, which became Chapter 1007 of the Acts of 1943, (which enacted Article 66-½,) sec. 178 (a) and (b) [and section 187] expressly applied to the "driver of a vehicle or operator of a street car * * *". In the Senate the words "or operator of a street car" were stricken out by amendment. Defendant informs us that whenever a bill requiring street cars to give right of way to vehicles has appeared before the legislature defendant's representatives have presented its views that such a requirement is wrong in theory and would prove dangerous in practice, and the legislature has consistently refused to apply the right of way provisions to street cars. If we assume that the Senate

amendments to section 178 originated with defendant, the question still is, not what defendant intended or hoped to accomplish by the amendments, but what is the true construction of the words of the act, primarily of section 140 (a). What a legislature omitted to say in an act is a most unreliable guide to legislative intent. If the Senate amendments had not been adopted section 178, [and section 187] as such, would have been applicable to street cars. Section 140 (a) is expressly applicable to street cars; the Senate amendments to section 178 [and section 187] do not prevent resort to section 187 (c) [or section 178] to find what is meant in section 140 (a) by "obeying the instructions of a stop sign".

*Judgment for the Baltimore Transit Company reversed, with costs, and new trial awarded.*

*Judgment for Miller affirmed with costs.*