Richard LEE, Appellant–Defendant,

v.

Kimberly HAMILTON, Appellee–Plaintiff.

No. 64A05–0504–CV–187.

Court of Appeals of Indiana.

Jan. 30, 2006.

Robert J. Konopa, Konopa Reagan & Aigotti, P.C., South Bend, for Appellant.

Gregory J. Sarkisian, David Andrick, Portage, for Appellee.

## OPINION

MAY, Judge.

Richard Lee appeals the jury's verdict for Kimberly Hamilton[1] in a personal injury lawsuit arising out of an automobile accident. Lee raises two issues, which we restate as:

1. Whether the trial court abused its discretion in excluding Lee's exhibits 6 and 24; and

2. Whether the trial court abused its discretion by declining to give two instructions Lee tendered.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On the morning of September 6, 2000, Philip O'Quinn was southbound on Swanson Road approaching U.S. 6 in Portage, Indiana. Hamilton, who is O'Quinn's sister, was a passenger in the car. Because of a power failure, the traffic controls at the intersection were not operating when

---

1. After the case was initiated Hamilton married and changed her name. We will refer to her as Kimberly Hamilton.

O'Quinn approached. O'Quinn stopped, checked traffic in both directions, moved forward about a car length and stopped again. After stopping the second time, O'Quinn entered the intersection.

At the same time, Lee was eastbound on U.S. 6, approaching Swanson Road from O'Quinn's right. Lee did not stop at the intersection and, as a result, his vehicle struck the right rear panel of O'Quinn's vehicle. The impact spun O'Quinn's vehicle around. O'Quinn's car came to rest after striking a school bus. As a result of the accident, Hamilton suffered shoulder and neck injuries, which required surgery and physical therapy.

Hamilton sued both O'Quinn and Lee for her injuries. She filed a complaint against Lee on June 12, 2001. After Lee asserted a non-party defense, Hamilton filed an amended complaint. In this amended complaint, filed on June 25, 2002 ("the June 25th complaint"), she alleged Lee was careless and negligent for, *inter alia,* failing to yield to oncoming traffic and O'Quinn was at fault for, *inter alia,* failing to maintain a proper lookout for vehicles in the roadway. O'Quinn moved for summary judgment on the basis of the Indiana Guest Statute, which motion was granted. Lee's motion to reinstate O'Quinn as a non-party was granted at the same time. Hamilton then filed a second amended complaint on September 4, 2003, which omitted mention of O'Quinn.

At trial, Lee sought to admit Exhibit 6, which was one page from Hamilton's pre-accident medical records, and Exhibit 24, a portion of the June 25th complaint. The trial court declined to admit Exhibit 6 because some of the notations on the record were illegible. The trial court determined Exhibit 24 was not a "judicial admission" and thus was not admissible.

Lee also tendered two jury instructions, which the trial court declined to give. Tendered Instruction No. 9 stated:

> At the time of the occurrence being considered in this case, an Indiana statute provided as follows:
>
> **9–21–8–23, Starting a vehicle that is stopped, standing or parked.**—A person may not start a vehicle that is stopped . . . until the movement can be made with reasonable safety.
>
> **9–21–8–29. Intersections; vehicles approaching from different highways; yield of right-of-way.** [W]hen two (2) vehicles approach or enter an intersection from different highways at approximately the same time, the person who drives the vehicle on the left shall yield the right-of-way to the vehicle on the right.
>
> If you find from a preponderance of the evidence that the non-party, Phillip [sic] Quinn, [sic] violated this statute on the occasion in question and the violation was without excuse or justification, such conduct would constitute fault to be assessed against the non-party, Phillip [sic] O'Quinn.

(App. of Appellant at 97.) Tendered Instruction No. 10 provided: "You are instructed that the fact that a motorist enters an uncontrolled intersection first does not give that motorist an absolute right-of-way or relieve him of his legal duty to exercise reasonable care for the safety of others." (*Id.* at 98.)

After a three-day trial, the jury returned a verdict for Hamilton in the amount of $250,000 and allocated ninety percent of the fault for the accident to Lee and ten percent of the fault to O'Quinn. The trial court entered judgment in the amount of $225,000 against Lee. Lee's motion to correct error was denied.

## DISCUSSION AND DECISION

### 1. *Admission of Evidence*

██ We review decisions concerning the admissibility of evidence for an abuse of discretion. *Walker v. Cuppett*, 808 N.E.2d 85, 92 (Ind.Ct.App.2004). An abuse of discretion occurs if the trial court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* A trial court may also abuse its discretion if its decision is without reason or is based upon impermissible considerations. *Id.* Even if a trial court errs in a ruling on the admissibility of evidence, we will reverse only if the error is inconsistent with substantial justice. *Id.* When the trial court excludes evidence, we ask whether the exclusion was proper. *State Dep't of Transp. v. Hoffman*, 721 N.E.2d 356, 358 (Ind.Ct. App.1999). "If any valid reason supports the exclusion of the evidence, there is no reversible error." *Id.*

### A. *Exhibit 6*

██ Lee argues the trial court erred in excluding Exhibit 6, which he offered to impeach Hamilton. Exhibit 6 is one page of Hamilton's medical records with entries from 1997, 1998 and 1999. Included in the January 26, 1999 entry are notations indicating Hamilton complained of occasional pains in her neck, shoulder and arm. Because Hamilton denied at trial that she had "any pre-accident neck, headache or shoulder complaints," (Br. of Appellant at 8), Lee argues Exhibit 6 was admissible to impeach her on this point.

The trial court, in making its preliminary determination regarding admissibility, stated: "I think [the document] has to be legible to be admissible and Defendant's 6 is not." (Tr. at 351.) In deciding not to admit Exhibit 6, the trial court noted: "I'm not denying admission based on any authenticity or anything. I'm accepting the stipulation and that this would fall under it. It's just on the legibility alone that I'm denying it." (*Id.* at 352.)

██ Although Lee argued at trial that the legibility of the document was a jury question, Hamilton argues, and we agree, legibility is a matter for the trial court to decide. Due to the dearth of cases dealing with the admission of partially or wholly illegible documents, we look to decisions addressing the admission of inaudible or unintelligible audio recordings. In *Benavides v. State*, 808 N.E.2d 708 (Ind.Ct.App. 2004), *trans. denied* 822 N.E.2d 972 (Ind. 2004), we noted an "audiotape [must] be intelligible enough to be probative of the purpose for which it is being offered." *Id.* at 711. Similarly, a document must be legible enough to be probative of the purpose for which it is being offered.

Our own examination of Exhibit 6 leads us to conclude it was not an abuse of discretion for the trial court to determine the document was illegible for the purposes of impeaching Hamilton's testimony regarding prior neck and shoulder problems. The document is not wholly illegible but, as the trial court noted, it "is not the most legible thing in the world. It's obviously written by a doctor." (Tr. at 349.) The relevant portion of the document is one of the least legible portions. The trial court, having determined the document was illegible, did not abuse its discretion in declining to admit Exhibit 6.

### B. *Exhibit 24*

██ Lee argues Exhibit 24 should have been admitted because the "clear statements contained in that document are inconsistent with [Hamilton's] fault allocation posture at trial." (Br. of Appellant at 5.) He asserts Exhibit 24 is admissible either as a judicial admission or for impeachment purposes. Hamilton argues

the June 25th complaint lost its character as an admission because it was superseded and the June 25th complaint would have confused the issues or misled the jury if it had been admitted.[2] The trial court determined the June 25th complaint was "not admissible as an admission," (Tr. at 360), because it was an allegation.

Count II of the June 25th complaint provides, in relevant part:

> 6. That the Defendant, PHILIP O'QUINN is at fault in the following respects:
>
> A. Defendant failed to maintain proper lookout for vehicles in the roadway;
>
> B. Defendant failed to maintain control of his vehicle; and
>
> C. Defendant failed to operate his vehicle in a safe and reasonable manner.
>
> * * * * *
>
> 8. That plaintiff's injuries and damages were caused by the carelessness and negligence of the defendant, PHILIP O'QUINN.

(App. of Appellant at 120–21.)

Lee's answer to the June 25th complaint provides, in relevant part:

### Legal Paragraph II
* * * * *

> 1. Defendant states that rhetorical paragraphs 1 through 8 of Legal Paragraph II of plaintiff's Amended Complaint are not directed to this defendant and therefore, said defendant, makes no answer thereto.
>
> * * * * *
>
> ### Legal Paragraph III
> * * * * *
>
> 1. That any allegations not specifically admitted, denied or controverted contained in plaintiff's Complaint are now specifically denied.
>
> * * * * *
>
> ### Legal Paragraph XIII
> * * * * *
>
> 1. That the injuries and damages of the plaintiff, if any, were caused in whole or in part by the co-defendant, Phillip [sic] O'Quinn.

(App. of Appellant at 43, 44, 49.)

O'Quinn's answer to the June 25th complaint "denies the allegations contained in Paragraph Six A–C of Count II of Plaintiff's Complaint [and] the allegations contained in Paragraph Eight of Count II of Plaintiff's Complaint." (App. of Appellee at 3.) With respect to Count I, O'Quinn notes that portion of "Plaintiff's Complaint is not directed to this answering defendant, and therefore defendant makes no responsive pleading." (Id. at 1–2.)

 "A judicial admission, that is, an admission in a current pleading or made during the course of trial, is conclusive upon the party making it." Waugh v. Kelley, 555 N.E.2d 857, 859 (Ind.Ct.App. 1990). "Withdrawn, amended, or superseded pleadings, which disappear from the

---

**2.** Hamilton also suggests Lee waived any argument regarding impeachment as an alternate basis for admitting Exhibit 24 because he failed to raise that basis at trial. However, when Lee's trial counsel moved to admit Defendant's Exhibits 3, 4, 5, 6 and 24, he described each and then stated, "We would move for their admission. Your Honor, the *exhibits are admitted for impeachment purposes."* (Tr. at 347) (emphasis supplied). Whether trial counsel was referring only to Exhibits 3, 4, 5 and 6, which were discussed in some detail subsequently, or all five exhibits is unclear. Lee did not waive his impeachment argument.

record as judicial admissions, are nevertheless admissible as evidence in contradiction and impeachment of the party's present claim." *State Farm Mut. Auto. Ins. Co. v. Shuman,* 175 Ind.App. 186, 199, 370 N.E.2d 941, 952 (1977). "To be admissible, the pleadings must contain evidence which is competent and relevant to the issue." *Id.* " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. However, "[relevant] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Evid. R. 403.

The June 25th complaint "disappear[ed] from the record as a judicial admission," *Shuman,* 175 Ind.App. at 199, 370 N.E.2d at 952, when Hamilton filed her second amended complaint on September 4, 2003. It was not admissible as a judicial admission.

■ Considering Exhibit 24 for impeachment purposes, Hamilton's prior allegations of fault against O'Quinn appear to satisfy the low "any tendency" threshold test for relevancy under Evidence Rule 401. However, as the trial court noted preliminarily, Exhibit 24 has the potential to mislead the jury and confuse the issues:

If I admit this exhibit, I'm also going to instruct the jury that the court found, as a matter of law, Mr. O'Quinn was not liable in this accident.... [O]therwise, it's totally misleading. But I'll admit it and I'll instruct the jury that Mr. O'Quinn was found not liable.

(Tr. at 356.) The discussion between the trial court and Lee's trial counsel highlights the confusing nature of Exhibit 24:

THE COURT: If I admit it, it's still going to be with the explanation to the jury so they don't think there's been a settlement. That's going to be their inference now, that Mr. O'Quinn is not in this, that there was some sort of settlement, and that we can't let them draw. So I'll have to tell them that, as a matter of law, he's been removed from the case.

[COUNSEL:] I don't have a problem if you say as a matter of law he's not—

THE COURT: He is not liable.

[COUNSEL:] I think the term liable is where I have the problem, because that's confusing.

THE COURT: That's specifically why he was removed, or why the summary judgment was granted, because he can't be liable, under the Guest Statute.

[COUNSEL:] We understand that, but I don't think they'll understand what liable means.

THE COURT: I don't think they'll understand this either.

(*Id.* at 358–59.)

Because Exhibit 24's potential to confuse the issues and mislead the jury substantially outweighs its probative value, the trial court's decision to exclude Exhibit 24 was not an abuse of discretion.

### 2. *Jury Instructions*

■ Whether to give a tendered jury instruction is left to the discretion of the trial court. *Allstate Ins. Co. v. Hennings,* 827 N.E.2d 1244, 1252 (Ind.Ct.App. 2005). When addressing a challenge to a trial court's decision not to give a tendered instruction, we consider "whether the instruction (1) correctly states the law, (2) is supported by the evidence in the record, and (3) is covered in substance by other instructions." *Id.* (quoting *Wal–Mart Stores, Inc. v. Wright,* 774 N.E.2d 891, 893

(Ind.2002), *reh'g denied* ). Refusal to give an instruction is not reversible error unless there is a reasonable probability that the substantial rights of the complaining party have been adversely affected. *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 944 (Ind.2001). The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair and correct verdict. *Centennial Mortgage, Inc. v. Blumenfeld*, 745 N.E.2d 268, 278 (Ind.Ct.App.2001).

### A. *Instruction No. 9*

■■ Lee argues the trial court erred when it declined to give Tendered Instruction No. 9 as it was a correct statement of the law, was supported by evidence presented, and "no other jury instruction contained these statutory provisions." (Br. of Appellant at 11.) Although Tendered Instruction No. 9 accurately reproduces the substance of Ind.Code §§ 9–21–8–23 and 9–21–8–29, the trial court properly declined to give the instruction because it does not correctly state the law applicable to this case.

The applicable statute, Ind.Code § 9–21–3–7, concerns intersections with traffic control signals and provides in part:

(a) Whenever traffic is controlled by traffic control signals exhibiting different colored lights or colored lighted arrows successively, one (1) at a time or in combination, only the colors green, red, or yellow may be used, except for special pedestrian signals under IC 9–21–18.

(b) The lights indicate and apply to drivers of vehicles and pedestrians as follows:

*(4) No indication or conflicting indications means the following:*

*(A) Vehicular traffic facing an intersection having a signal that displays no indication or conflicting indications,* *where no other control is present, shall stop before entering the intersection.*

*(B) After stopping, vehicular traffic may proceed with caution through the intersection and shall yield the right-of-way to traffic within the intersection or approaching so closely as to constitute an immediate hazard.*

Ind.Code § 9–21–3–7 (emphasis supplied).

At the time of the accident, the stoplight at the intersection of U.S. 6 and Swanson Road was not operating and temporary stop signs had not yet been placed there to control traffic. Subsection (4) addresses this situation—where traffic controls are installed but are malfunctioning or, as in this case, not functioning at all, and no other controls are in place. *See Indianapolis Rys. v. Boyd*, 222 Ind. 481, 493, 53 N.E.2d 762, 766 (1944) ("the Legislature intended that the right-of-way as between vehicles at an intersection where traffic is controlled by traffic control signals must be determined by the special rules" of the Indiana Code dealing with intersections with control signals), *reh'g denied* 222 Ind. 481, 54 N.E.2d 272 (1944).

Accordingly, in Instruction No. 19, the trial court instructed the jury regarding traffic regulation where traffic control signals are present but not functioning properly. That instruction includes Ind.Code § 9–21–3–7(b)(4) and concludes: "If you find from a preponderance of the evidence that any party violated this statute on the occasion in question and the violation was without excuse or justification, such conduct would be negligence per se and constitute fault to be assessed against the party." (App. of Appellee at 24.) The trial court did not abuse its discretion by declining to give Tendered Instruction No. 9.

### B. *Instruction No. 10*

■■ Lee also argues the trial court erred in declining to give his tendered

Instruction No. 10 regarding a motorist's duty to exercise reasonable care when entering an uncontrolled intersection. He opines that because the jury was not so instructed, the "jurors very easily may have assumed that O'Quinn entered the intersection with impunity since he had the right-of-way." (Br. of Appellant at 12.) Hamilton argues the law described in Lee's tendered instruction is not applicable to this case because the intersection was not, in fact, uncontrolled and the substance of the tendered instruction was covered by other instructions.

We agree the substance of Tendered Instruction No. 10 was covered by other instructions given by the trial court. Instruction No. 12 defined negligence, No. 13 defined reasonable care, No. 16 noted the duty of a driver to maintain a proper lookout, No. 17 described a passenger's duty of care, and No. 19 discussed the requirements for drivers approaching an intersection with a malfunctioning traffic light. Taken together, these instructions indicate a driver has a continuing duty to act with reasonable or ordinary care at all times. Such a duty would necessarily encompass the care to be exercised when a driver who has the right-of-way enters an intersection. The trial court did not abuse its discretion in declining to give Tendered Instruction No. 10.

The trial court did not abuse its discretion in excluding Exhibits 6 and 24 or in declining Defendant's Tendered Instructions Nos. 9 and 10. Accordingly, we affirm.

Affirmed.

SHARPNACK, J., and VAIDIK, J., concur.